18-831
*Eliya, Inc. v. Steven Madden, Ltd.*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of October, two thousand eighteen.

PRESENT:
> JON O. NEWMAN,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> RICHARD J. SULLIVAN,
> > *District Judge.*\*

––––––––––––––––––––––––––––––––––––––––––

ELIYA, INC., a New York Corporation,
> *Plaintiff-Appellant*,

v.                                                                No. 18-831

STEVEN MADDEN, LTD., a Delaware Corporation,
> *Defendant-Appellee*,

and

DOES 1-10 AND J & L, a Peoples Republic of China Company,
> *Defendants*.

––––––––––––––––––––––––––––––––––––––––––

---

\* Judge Richard J. Sullivan, of the United States District Court for the Southern District of New York, sitting by designation.

FOR APPELLANT:                    TEDD D. LEVINE, ESQ.,
                                  Garden City, New York,

FOR APPELLEE:                     DOUGLAS A. MIRO, Amster, Rothstein &
                                  Ebenstein LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hurley, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on March 2, 2018, is **AFFIRMED**.

Plaintiff-appellant Eliya, Inc. ("Eliya") appeals from a judgment entered in the United States District Court for the Eastern District of New York (Hurley, *J.*), dismissing under Federal Rule of Civil Procedure 12(b)(6) Eliya's claims against defendant-appellee Steven Madden, Ltd. ("Madden"), defendant J&L, and several unnamed defendants for, *inter alia*, trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1125. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

**I.**

Eliya is in the business of designing, manufacturing, and selling shoes. Eliya alleges that Madden infringed its trade dress in three shoe designs that Eliya created—the Lulia Shoe, the Comfi Shoe, and the Catwalk Shoe (collectively, the "Bernie Mev shoes").[1] According to Eliya, each shoe has a unique trade dress formed by "the aggregate of the specific features of such shoes." First Amended Complaint ("FAC") ¶ 11. As described by Eliya in the FAC, these three shoe designs feature "[a]pproximately ¼ inch multi-color or multi-shaded wide straps that form a woven distinctive alternating pattern on the upper

---

[1] The original Complaint, but not the operative First Amended Complaint, states that Eliya markets the Lulia Shoe, the Comfi Shoe, and the Catwalk Shoe under the brand name "BERNIE MEV®." The statement of Eliya's counsel at oral argument that Madden infringed on *two* shoe designs appears to have been made in error.

portion of the shoe," and "an appendage on the heel that extends higher than the weave portion and includes cutouts [through] which the weave can be seen." *Id.* ¶¶ 12, 15, 18. Lulia and Comfi shoes both have a "mary jane strap." The Comfi shoe has an "open toe with an angular cut out shape," and the other two shoes have "closed toes with an angular shape on the top front portion of the shoe." The sole of the Lulia shoe has "horizontal grooves" and "weaved notches extending up from the bottom." The Catwalk shoe has a flat sole, and the Comfi shoe has "[a]n angular-like shape on the top portion" and "[v]ertical grooves" on the sole. *Id.* ¶¶ 12, 15, 18.

Eliya alleges that, by combining these features, these shoes have an "innovative and unique look," and their "trade dress is well known to the consuming public and the trade" as identifying "Eliya as the exclusive and unique source of shoes that use such trade dress." *Id.* ¶¶ 13, 16, 19, 30. Eliya's assertions of trade dress protection are based entirely on unregistered trade dress rights: the United States Patent and Trademark Office declined to register two of the three product designs at issue, and Eliya does not allege that it attempted to register the third design.

In its FAC, filed in April 2017, Eliya asserts four causes of action against Madden: two claims under section 43 of the federal Lanham Act, 15 U.S.C. § 1125 (for false designation of origin by trade dress copying and unfair competition against all defendants, and contributory infringement against J&L only); and two claims under New York State law (for common law unfair competition and violation of Section 360-1 of the New York General Business Law). In a Report and Recommendation dated January 11, 2018 (the "R&R"), the Magistrate Judge (Locke, *M.J.*) recommended dismissing the Lanham Act claims for failure to state a claim and declining to exercise supplemental jurisdiction over the state law claims. On February 22, 2018, in a short memorandum opinion, the District Court adopted the R&R in full and granted defendants' motion to dismiss. Judgment was entered and the case closed on March 2, 2018.

We review the District Court's dismissal de novo, taking as true the factual allegations made in the FAC and drawing all reasonable inferences in Eliya's favor. *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018).

3

## II.

Federal trademark law protects recognizable trademarks, with the goal of benefiting both consumers (who rely on trademarks as a signifier of source and quality) and trademark owners (who have a right to protect and profit from their reputation in the market). *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215–16 (2d Cir. 2012). Trademark protection may apply not only to words or symbols, *see* 15 U.S.C. § 1127, but also to "trade dress," a concept that "encompasses the overall design and appearance that make the product identifiable to consumers," *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). We "exercise particular caution when extending protection to product designs" in this way. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (internal quotation marks omitted). Unlike patent and copyright law, which "bestow limited periods of protection," trademark protection is open-ended. *Id.* at 115. It is "not intended to protect innovation by giving the innovator a monopoly over a useful product feature." *Christian Louboutin*, 696 F.3d at 216 (emphases, alterations, and internal quotation marks omitted).

A plaintiff who asserts a trademark claim bears the burden of establishing a protectable trademark. *See id.* We have explained that, "for a trademark to be protectable, the mark must be 'distinctive' and not 'generic.'" *Id.* Trade dress law does not protect "an idea, a concept, or a generalized type of appearance." *Yurman*, 262 F.3d at 115 (internal quotation marks omitted).

To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must offer (1) "a precise expression of the character and scope of the claimed trade dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). A plaintiff seeking relief for trade dress infringement must also allege that (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) there is a likelihood of confusion between the plaintiff's goods and the defendant's. *See Yurman*, 262 F.3d at 115–16.

4

Accepting the Magistrate Judge's thorough analysis, the District Court concluded that the FAC failed to meet three of these four requirements. On de novo review, we agree with the Magistrate Judge and the District Court's conclusions and reasoning.

First, the FAC fails to offer a precise expression of the character and scope of Eliya's claimed trade dress. As we discussed in *Landscape Forms*,

> [F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea.

*Landscape Forms*, 113 F.3d at 381. As noted by the District Court, Eliya's descriptions amount to "a laundry list of the elements that constitute a shoe's features," with no explanation as to how they are distinctive. Op. 5. *See Yurman*, 262 F.3d at 117 (A party seeking trade dress protection "must . . . be able to point to the elements and features that *distinguish* its trade dress.") (emphasis added). In this case, the photos of the shoes do not make up for the deficiency in the precise expression of the distinctive features of the trade dress.

Second, the FAC fails to plausibly allege that the claimed trade dress is non-functional. "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995). We are constrained by a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001). Case law recognizes two types of functionality: "traditional" (or "utilitarian") and "aesthetic." *Christian Louboutin*, 696 F.3d at 219. A product feature is deemed "functional in a utilitarian sense if it is . . . essential

to the use or purpose of the article, or if it . . . affects the cost or quality of the article." *Id.* (citations and internal quotation marks omitted). An ornamental product feature is "aesthetically functional" if "trademark protection would significantly hinder competition by limiting the range of adequate alternative designs." *Id.* at 222 (internal quotation marks omitted). In contrast, "distinctive and arbitrary arrangements of predominantly ornamental features that do not hinder potential competitors from entering the same market with differently dressed versions of the product are non-functional, and are hence eligible for trademark protection." *Id.* (internal quotation marks and alterations omitted).

Here, the FAC alleges no specific facts that plausibly support non-functionality. Certain features, such as the strap and the raised heel tab, are traditionally functional in that they enable the user to put the shoe on and wear it. Regarding ornamental features, the FAC merely alleges that "there are numerous alternatives where competitive shoes can be constructed differently" and presents images of purported "alternative designs," featuring shoes made in completely different styles from the Bernie Mev shoes and the Madden shoes. FAC ¶ 21(i)–(vi). That shoes exist in styles that differ from the Bernie Mev shoes does not entitle Eliya to trade dress protection.

Third, the FAC fails to plausibly allege a likelihood of confusion. The allegations that speak to this requirement, FAC ¶¶ 28–31, are entirely conclusory. Notably, the FAC offers no written description of the Madden shoes and fails to explain their resemblance to the Bernie Mev shoes. And it is not apparent to us from the FAC's side-by-side juxtaposition of images of the Bernie Mev and Madden shoes that consumers are likely to be confused by similarities between the two.

\* \* \*

We have considered Eliya's remaining arguments as well and conclude that they are without merit. Accordingly, for substantially the reasons stated in the R&R and the District Court's Order, and those set forth above, we **AFFIRM** the District Court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court